UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTOL STRUCKMAN,
Plaintiff,

vs.

ADDYSTON POLICE
DEPARTMENT, et al.,
Defendants.

Case No. 1:12-cv-184
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Estol Struckman brings this civil rights action under 42 U.S.C. §1983 against defendant Brandon Goff, an officer with the Addyston Police Department, alleging an excessive use of force in violation of plaintiff's Fourth Amendment rights.[1] This matter is before the Court on defendant Goff's motion for summary judgment (Doc. 37), plaintiff's response in opposition (Doc. 38), and defendant Goff's reply memorandum (Doc. 41).

**I. Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

In response to a properly supported summary judgment motion, the non-moving party "is

---

[1] Plaintiff's claims against all other defendants have been dismissed. *See* Doc. 19.

required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it. . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 323-24. The moving party need not support his motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex*, 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The Court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

**II. FACTS**

Defendant Goff presents the following evidence. During the early morning hours of March 3, 2010, plaintiff was one of four passengers in a car driven by plaintiff's girlfriend, Michelle Boldt. (Doc. 37, Ex. 1, ¶¶ 2, 10, Goff Declaration). Defendant Goff observed an

inoperable front headlight on the vehicle and conducted a traffic stop in a gas station parking lot. (Doc. 37, Ex. 1, ¶¶ 3-4; Doc. 37, Ex. 2 at 26, 35). Defendant Goff called for additional officers to respond to the location of the traffic stop. (Doc. 37, Ex. 1, ¶ 5).

After defendant Goff approached the car, he observed the driver and plaintiff, the front seat passenger, were not wearing their seatbelts. (Doc. 37, Ex. 1, ¶ 6). Other police officers from the Delhi Township Police Department, Cleves Police Department, and the Hamilton County Sheriff's Department arrived on the scene. (Id., ¶ 9). Defendant Goff asked Ms. Boldt for her license and proof of insurance. He also asked the four passengers in the vehicle to produce identification, to which plaintiff responded, "call the police chief" and "I don't believe this; are you serious?" (Doc. 37, Ex. 1, ¶¶ 10, 12; Doc. 37, Ex. 2 at 43). Defendant Goff states that plaintiff refused to identify himself, became loud and disruptive, and smelled of alcohol. (Doc. 37, Ex. 1, ¶¶ 10, 12, 13, 14).

Defendant Goff avers that after plaintiff became loud and disruptive, Goff approached the front passenger side of the vehicle where plaintiff was seated, opened the door, and asked plaintiff to step out of the car. (Doc. 37, Ex. 1, ¶ 14). Defendant Goff states that plaintiff refused to exit the vehicle. Defendant Goff states he then advised plaintiff he was under arrest, took hold of his arm, and attempted to pull plaintiff out of the vehicle; however, plaintiff tightened up and pulled back against him. (Id., ¶¶ 14, 15). Defendant Goff states that when plaintiff resisted, Goff attempted a straight arm bar maneuver consistent with his police training to remove plaintiff from the car. (Id., ¶ 15). Defendant Goff states that when plaintiff began pulling back, Goff delivered two closed-fist strikes to plaintiff's abdomen and one to his shoulder consistent with his police training to control a resisting subject. (Id., ¶ 19). Defendant Goff states another officer was then able to pull plaintiff from the vehicle and place him on the ground. (Id., ¶ 20).

Plaintiff continued to resist after he was removed from the vehicle. Defendant Goff then placed his knee against plaintiff's lower back in order to handcuff him. (*Id.*, ¶ 21). Goff states he then placed plaintiff in the back seat of his police cruiser. (*Id.*, ¶ 22).

Plaintiff presents the following evidence. During the traffic stop, Ms. Boldt could not immediately locate her driver's license or insurance card. (Doc. 38, Ex. 2, ¶ 6, Boldt Declaration). While she searched for these documents, two of the backseat passengers and plaintiff, all of whom had been drinking, "began talking at Officer Goff," who then ordered all of the passengers to produce identification. (*Id.*, ¶¶ 7, 8). Plaintiff testified that when Goff asked him for his identification, he told Goff to "call the police chief" and "are you serious?" (Doc. 37, Ex. 2 at 43). Plaintiff did not give defendant Goff his identification at that time. Defendant Goff then approached the front passenger side of the vehicle, "ripped" open the passenger door of the car, grabbed plaintiff's left arm, and told plaintiff to step out of the vehicle. (Doc. 37, Ex. 2 at 48, 53; Doc. 38, Ex. 2, ¶ 13). Plaintiff states a second officer was holding his right arm. (Doc. 37, Ex. 2 at 48). Plaintiff states he did not resist defendant Goff's order to exit the vehicle, but he could not immediately comply because both officers had each of his arms and he was restrained by his buckled seatbelt. (Doc. 37, Ex. 2 at 54). Ms. Boldt avers that the officers could not remove plaintiff from the car because his seatbelt was secured. (Doc. 38, Ex. 2, ¶ 13). Ms. Boldt states that defendant Goff pulled so hard on plaintiff's arm that he ripped the sleeve off the sweater plaintiff was wearing. (*Id.*, ¶ 14; Ex. 2 at 50, 52-53). Ms. Boldt avers that defendant Goff then hit and punched plaintiff about 15 times in the chest with both of his hands. Ms. Boldt states she then reached over and unbuckled plaintiff's seatbelt. (*Id.*, ¶¶ 15-19). Plaintiff was then pulled out of the vehicle and thrown to the ground. (*Id.*, ¶¶ 20, 22). Ms. Boldt states that plaintiff was face down, laying "spread eagle" and still when both Goff and the other officer

began to stomp plaintiff in the back with their feet at least five times. (*Id.*, ¶¶ 23, 25). Plaintiff avers that he did not resist the police officers in any way after he was removed from the car and thrown to the ground. (Doc. 38, Ex. 1, ¶ 7). Defendant Goff then told plaintiff he was under arrest, knelt down, handcuffed plaintiff, and pulled plaintiff to his feet. (Doc. 38, Ex. 2, ¶ 28). Plaintiff states that as a result of the altercation, he sustained bruising to his chest and back and suffered significant pain for which he sought medical attention. (Doc. 38, Ex. 1, ¶¶ 8-9).

Plaintiff was charged with obstructing official business, resisting arrest, and menacing. (Doc. 37, Ex. 1, ¶ 24). He ultimately pled guilty to a reduced charge of disorderly conduct and the other charges were dismissed. (Doc. 38, Ex. 1, ¶¶ 12-13).

Defendant Goff moves for summary judgment on plaintiff's excessive use of force claim. Defendant Goff argues that plaintiff's amended complaint fails to adequately allege whether the claim is brought against defendant in his individual or official capacity and, consequently, defendant is entitled to summary judgment as a matter of law. Assuming, *arguendo*, that plaintiff's amended complaint alleges an individual capacity claim, defendant Goff asserts he is nevertheless entitled to summary judgment on the basis of qualified immunity. (Doc. 37).

**III. Sufficiency of Plaintiff's Pleading**

Defendant Goff contends that plaintiff's complaint fails to indicate whether defendant Goff is named in his individual or official capacity. Absent such indication, defendant Goff maintains that the Court must presume plaintiff is suing him in his official capacity. (Doc. 37 at 8) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991) (holding that absent any indication that defendants are being sued in their individual capacities, courts must assume they are being sued in their official capacities)). If the Court construes plaintiff's complaint as raising an official capacity claim against defendant Goff, the complaint must be dismissed as to

5

defendant Goff because the proper defendant in an official capacity action would be the Village of Addyston, which has already been dismissed from this case. (Doc. 37 at 9) (citing *Hill v. Daviess Cty. Det'n Center*, No. 4:09-cv-P58, 2009 WL 3614307, at *2 (W.D. Ky. Oct. 29, 2009) (construing a § 1983 claim against individual defendants as an official capacity claim where plaintiff failed to plead the capacity in which he was suing defendants and holding that the proper defendant and real party in interest was therefore the municipality)). *See also* Doc. 19.

In response, plaintiff argues that he adequately pled an individual capacity excessive force claim against defendant Goff. Plaintiff supports this contention by citing to this Court's previous Report and Recommendation concluding that while the amended complaint did not state a municipal liability claim, plaintiff had alleged sufficient facts to state an excessive use of force claim against defendant Goff.[2] (Doc. 38 at 4) (citing Doc. 19 at 2). Plaintiff maintains that the Court's prior ruling and the allegations in his amended complaint put defendant Goff on sufficient notice that he was being sued in his individual capacity.

Generally, a § 1983 complaint must specify the capacity – individual or official – under which a defendant is being sued. *Wells v. Brown*, 891 F.2d 591, 592-94 (6th Cir. 1989). "The rationale behind this requirement is to afford [governmental] officials sufficient notice of the fact that they could be held personally liable for the payment of any damage award obtained by the plaintiff." *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995). In the absence of any specification of capacity in a complaint, courts will apply a "course of proceedings test" to "determine whether the § 1983 defendants have received notice of the plaintiff's intent to hold them personally liable." *Shepherd v. Wellman*, 313 F.3d 963, 967-68 (6th Cir. 2002); *see also Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) ("When a § 1983

---

[2]The Report and Recommendation was affirmed and adopted by the District Judge on October 25, 2012. (Doc. 19).

6

plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether . . . notice has been satisfied."). In applying this test, courts consider "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Shepard*, 313 F.3d at 969 (citing *Moore*, 272 F.3d at 772 n. 1). In addition, courts should examine subsequent pleadings to determine if the defendant was put on notice he is being sued in his individual capacity. *Id.*

The undersigned finds that although plaintiff's amended complaint does not identify the capacity in which defendant Goff is sued, the course of proceedings in this case puts defendant Goff on notice of plaintiff's intent to sue him in his individual capacity.

First, the District Judge adopted the Report and Recommendation to *sua sponte* dismiss all claims against all defendants, including the Addyston Police Department, with the sole exception of the excessive use of force claim against defendant Goff. This Order signaled that Goff was sued in his individual capacity. The Order explicitly states that "the *sole remaining Defendant* in this matter is Brandon Goff, and the sole claim is the claim relating to the use of excessive force." (Doc. 19 at 2) (emphasis added).³ This clarification provided defendant Goff with sufficient notice that the Court construed plaintiff's § 1983 excessive force claim against Goff in his individual capacity. *See* Docs. 15, 19. *See also Pelfrey*, 43 F.3d at 1038 (courts make look to subsequent filings in determining whether a defendant is being sued in his or her individual capacity).

---

³The undersigned notes that plaintiff was without the benefit of counsel at the time he filed the amended complaint. A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This liberal interpretation does not abrogate basic pleading essentials. *Id.*

7

Second, plaintiff affirmed his intent to sue defendant Goff in his individual capacity in his subsequent filings. In response to the instant motion for summary judgment, plaintiff argues that he adequately pled an individual capacity excessive force claim against defendant Goff in his amended complaint. *See* Doc. 38 at 4. Plaintiff's responsive brief suffices to put defendant Goff on notice of his individual capacity suit. *See Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (holding that the plaintiff's response to the defendant's motion for summary judgment supplied sufficient notice of the plaintiff's intent to state an individual capacity claim); *accord Moore*, 272 F.3d at 772.

Third, plaintiff's amended complaint provides sufficient detail such that defendant Goff should have been aware that plaintiff sought to hold him personally liable for his alleged actions. *See* Doc. 12, ¶¶ 13-14 (plaintiff specifically named defendant Goff as the officer who punched and kicked him). Defendant Goff is the only officer named by plaintiff in his amended complaint when describing the events which form the basis of his excessive force claim. *Id.* By amending the complaint to add defendant Goff as an individual defendant and alleging specific actions on the part of Goff that support plaintiff's Fourth Amendment claim, plaintiff put defendant Goff on notice that he sought to hold him individually liable.

Finally, defendant Goff raised the defense of qualified immunity in his answer to plaintiff's allegations as well as in his motion for summary judgment. *See* Doc. 18, ¶ 32; Doc. 37 at 10. "The assertion of a qualified-immunity defense (even a *contingent* qualified-immunity defense) indicates that the defendants were aware they could be held personally liable." *Lindsay v. Bogle*, 92 F. App'x 165, 169 (6th Cir. 2004) (emphasis in the original) (citations omitted); *accord Moore*, 272 F.3d at 772 n.1; *Nails v. Riggs*, 195 F. App'x 303, 307 (6th Cir. 2006). By

8

asserting a qualified immunity defense, defendant Goff has demonstrated that he was on notice of plaintiff's intent to sue him in his individual capacity.

In consideration of the allegations in the amended complaint and the course of proceedings, defendant Goff was put on notice that plaintiff intended to sue him in his individual capacity. Accordingly, defendant's argument that plaintiff's claim against him should be construed as an official capacity claim and dismissed is not well-taken.

## IV. Qualified Immunity

Defendant Goff alternatively asserts that in the event the Court construes plaintiff's amended complaint as stating a claim against him in his individual capacity, he is nevertheless entitled to summary judgment on the basis of qualified immunity.

Government officials performing discretionary functions are generally shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Once the defendant raises a qualified immunity defense to a claimed constitutional violation, "it is plaintiff's burden to prove that the state officials are not entitled to qualified immunity." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). The plaintiff must satisfy a two-pronged analysis: (1) Taken in the light most favorable to the party asserting the injury, do the facts alleged show that the official's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submissions, was the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). The Court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances. *Pearson*, 555 U.S. at

236. "But underlying either prong, courts may not resolve genuine disputes of material fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curiam) (internal citations omitted).

The qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 606 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Saucier*, 533 U.S. at 201-02).

**A. Whether the facts alleged, taken in the light most favorable to plaintiff, establish that defendant Goff's conduct violated the Fourth Amendment.**

The federal right at issue here is plaintiff's constitutional right to be free from the use of excessive force. A claim that a police officer used excessive force in the course of an arrest is properly analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). *See also Baker*, 471 F.3d at 606. Under this standard, the court must take into consideration the totality of the circumstances. *Graham*, 490 U.S. at 396. In applying the objective reasonableness test, the court is required to pay "careful

10

attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* The test of the "reasonableness" of a particular use of force by a police officer is objective and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The court is not to substitute its own ideas as to what is "proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. A mistaken belief may still be a reasonable belief, and the fact that it turned out to be mistaken does not undermine its reasonableness as considered at the time of the acts. *Frodge v. City of Newport*, 501 F. App'x 519, 529 (6th Cir. 2012) (citing *Saucier*, 533 U.S. at 205).

Defendant Goff contends that his actions under the circumstances were reasonable and necessary to effect plaintiff's lawful arrest and he claims that any force used was in accordance with his police training. Defendant Goff states that plaintiff was intoxicated, belligerent, and not wearing a seatbelt. He states that plaintiff refused to identify himself and to comply with the order to exit the vehicle. Defendant Goff states that after he advised plaintiff he was under arrest, he took hold of plaintiff's arm to remove him from the vehicle by using approved police maneuvers. He states plaintiff was actively resisting him by tightening up and pulling back when Goff attempted to pull plaintiff out of the car, and this resistance required Goff to deliver two closed fist strikes to plaintiff's abdomen and one to his shoulder to forcibly remove plaintiff from

11

the vehicle. Defendant Goff states that after plaintiff was placed on the ground, he did not strike the plaintiff but simply placed his knee against plaintiff's lower back in order to handcuff him.

Plaintiff's version of events is in stark contrast. Plaintiff testified that defendant Goff grabbed his arm and pulled so forcefully that the sleeve was ripped off his sweater. Plaintiff's evidence indicates that he was not resisting arrest, but was restrained by his seatbelt from exiting the vehicle. Ms. Boldt avers that defendant Goff punched plaintiff about 15 times in the chest with closed fists. Once plaintiff was freed from his seatbelt, defendant Goff threw him to the ground and kicked him repeatedly.

Applying the Fourth Amendment reasonableness standard, the Court finds that the facts taken in the light most favorable to plaintiff could establish a violation of plaintiff's Fourth Amendment rights. Plaintiff has come forward with evidence that raises factual issues as to whether defendant Goff's use of force was objectively reasonable under the circumstances.

First, plaintiff was being arrested for obstructing official business. (Doc. 41 at 5). The reasonableness of defendant Goff's use of force, alleged to be the repeated punching and kicking of plaintiff, must be measured against this backdrop. The crime was a minor offense that would not justify the alleged amount of force used by defendant Goff. *Graham*, 490 U.S. at 396.

Second, when crediting plaintiff's version of the facts as the Court must do in assessing the defense of qualified immunity on summary judgment, there is no evidence that plaintiff posed an immediate threat to the safety of the officers or others. *Graham*, 490 U.S. at 396. There is no evidence that plaintiff harbored any weapons or that he made verbal threats to the officers while in the vehicle or later on the ground.[4] Rather, he allegedly told defendant Goff to "call the police chief" and stated "are you serious?" when asked for identification. (Doc. 37, Ex.

---

[4] Plaintiff's alleged statements while in the police cruiser (that "he was going to whip [Goff's] ass" and threatening to break out of his handcuffs) occurred after Goff's use of force had already ended and does not support Goff's defense of qualified immunity.

1, ¶¶ 10, 12). In addition, police officers from three other police departments were on the scene to assist defendant Goff in the traffic stop. There is no evidence that any of the other passengers were uncooperative or posed a threat to the officers. These facts, viewed objectively, do not show that plaintiff posed any immediate threat to the officers' safety.

Third, there is no evidence that plaintiff attempted to flee. Whether plaintiff resisted arrest and failed to comply with defendant Goff's order to exit the car are disputed issues of fact. Defendant Goff argues that his actions were reasonable because plaintiff did not exit the vehicle after being asked to so and after he was placed under arrest. (Doc. 41 at 4). In contrast to defendant Goff's version of the incident, plaintiff's testified that he was not advised he was under arrest while he was seated in Ms. Boldt's vehicle. He also testified that he did not refuse to exit the vehicle, but was physically unable to because he was restrained in his seatbelt while defendant Goff and another officer held his arms. Ms. Boldt's declaration supports this version of events, which the Court must credit when analyzing defendant's qualified immunity defense. Finding that defendant Goff is entitled to qualified immunity based on his statements would require the Court to credit his version of events over that of plaintiff's and resolve the factual issues identified above in defendant's favor, which the Court may not do on summary judgment when evaluating the defense of qualified immunity. *Tolan*, 134 S.Ct. at 1868.

Even if defendant Goff was under the mistaken belief that plaintiff's seatbelt was unbuckled and the resistance he perceived from plaintiff was volitional, there are disputed issues of fact as to the amount and type of force used by Goff in extracting plaintiff from the car. Officer Goff states he used two closed fist punches to the abdomen and one to the shoulder to effect the extraction, whereas Ms. Boldt avers Officer Goff punched plaintiff about 15 times in the chest. Moreover, the parties' versions of the facts again diverge once plaintiff was extracted

from the car. Officer Goff states he placed plaintiff on the ground, placed his knee in plaintiff's back, and handcuffed him. In contrast, both plaintiff and Ms. Boldt state that plaintiff was thrown to the ground and repeatedly kicked by defendant Goff before plaintiff was placed in handcuffs and finally advised he was under arrest. Plaintiff also states that he did not resist when he was on the ground and Ms. Boldt stated plaintiff was still while he was on the ground.

Under plaintiff's version of events, he did not resist exiting the vehicle when ordered by defendant Goff. Rather, he was unable to comply with the order because both of his arms were being held by the officers and he could not unbuckle his seat belt to exit. Punching a non-resisting misdemeanant suspect 15 times in the chest to effect his extraction from a vehicle is not objectively reasonable. Likewise, in crediting plaintiff's evidence, plaintiff did not resist after he was placed on the ground. Viewing the facts in the light most favorable to plaintiff, no reasonable officer would believe that kicking and stomping a passive suspect lying face down at least five times was necessary to effect an arrest.

Accepting plaintiff's version of the incident, a reasonable jury could find that defendant Goff's use of force was objectively unreasonable and excessive and violated plaintiff's Fourth Amendment rights.

**B. Whether plaintiff's right to be free from the type of force used by defendant Goff was "clearly established" at the time of the incident.**

Having determined that plaintiff could establish a violation of his Fourth Amendment right to be free from the use of excessive force, the Court must determine whether the constitutional right was clearly established. As explained above, there are genuine issues of material fact as to whether plaintiff was actively resisting arrest at the time defendant Goff attempted to extract him from the vehicle and after plaintiff was placed on the ground and handcuffed. If those material issues of fact are resolved in plaintiff's favor, then plaintiff could be found to be a nonfleeing, non-

resisting suspect in a misdemeanor crime who did not pose an immediate threat to anyone. As such, the relevant question is whether it was clearly established as of March 3, 2010, that repeatedly punching, hitting and kicking a misdemeanor suspect who was not told he was under arrest, not fleeing, not actively resisting arrest, and not disobeying any commands, amounted to excessive force. The Court finds that under those circumstances, the right to be free from excessive force had been clearly established. *See Baker*, 471 F.3d at 607 ("We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.") (and cases cited therein). The fact that plaintiff was not handcuffed at the time he was allegedly punched and kicked does not preclude a finding of unreasonableness under Sixth Circuit precedent. *Baker*, 471 F.3d at 607 (citing cases). The Court concludes that a reasonable officer in defendant Goff's position should have known that hitting, punching, and kicking a non-resisting, non-fleeing misdemeanant arrestee would have constituted excessive force.

   In sum, the parties' conflicting versions of the events that occurred on March 3, 2010, present genuine issues of material fact which preclude granting summary judgment on plaintiff's excessive force claim. Plaintiff has come forward with evidence raising factual issues as to whether defendant Goff's use of force was objectively reasonable under the circumstances. Accepting plaintiff's account of the incident as true and drawing all reasonable inferences therefrom in plaintiff's favor, as the Court must, plaintiff demonstrates a colorable claim of excessive force in violation of plaintiff's Fourth Amendment rights. Accordingly, defendant is not entitled to qualified immunity on plaintiff's Fourth Amendment claim.

## V. Conclusion

The course of proceedings in this matter placed defendant Goff on notice of plaintiff's intent to sue him in his individual capacity. In addition, viewing the facts and evidence in a light most favorable to plaintiff, *Matsushita*, 475 U.S. at 587, a fair-minded jury could return a verdict for plaintiff on his Fourth Amendment excessive force claim. Defendant Goff is therefore not entitled to summary judgment as a matter of law.

**IT IS THEREFORE RECOMMENDED THAT** defendant Goff's motion for summary judgment (Doc. 37) be **DENIED**.

Date: 12/8/14

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ESTOL STRUCKMAN,
    Plaintiff,

vs.

ADDYSTON POLICE
DEPARTMENT, *et al.*,
    Defendants.

Case No. 1:12-cv-184

Spiegel, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17